A93A1259, A93A1260. PETERS v. HYATT LEGAL SERVICES;
and vice versa.
(440 SE2d 222)

SMITH, Judge.

Richard E. Peters brought suit against Hyatt Legal Services (Hyatt), Hyatt attorney Linda Gross, and Hyatt legal assistant and notary public Kasonya M. Storey for damages resulting from Hyatt's representation of Peters in an uncontested divorce action. Defendant Gross died after the filing of Peters's complaint and before the entry of the judgments below. Cross-motions for summary judgment were filed, and Peters and Hyatt filed an appeal and cross-appeal, respectively, from the trial court's rulings on these and other motions.

Peters and his former wife were married on July 2, 1986. At the time, both were enlisted in the United States Army, with Mr. Peters stationed in what was then West Germany, and Mrs. Peters in Kentucky. Almost eight months later, Mrs. Peters gave birth to a son.

About September 1987, Mrs. Peters received a transfer to West Germany. Mr. Peters borrowed $1,700 from the United States government to place a security deposit on an apartment for the family. Two weeks after the reunited family moved into the apartment in the latter part of 1987, Mr. Peters moved out. In January 1988, he found his wife in bed with another man. Mr. and Mrs. Peters took steps to separate legally that same month. Counsel for Mrs. Peters in West Germany prepared, and Mrs. Peters executed, a proposed settlement agreement. However, Mr. Peters did not agree to the terms proposed and did not sign the agreement.

On October 14, 1988, Mr. Peters returned to the United States on military leave to obtain a divorce. He consulted Hyatt attorney Gross for this purpose, paying approximately half of the total fee at his first visit. He furnished Gross with a copy of Mrs. Peters's proposed settlement agreement and allegedly informed Gross of changes and additions required to prepare an agreement acceptable to him. Primarily, he sought the return of his mother's family rings and the security deposit on the apartment. Mr. Peters returned to West Germany with the understanding that he would be billed for the remainder of the fee and that paperwork would be sent to his wife within 30 days. He had no further contact with Hyatt prior to the time a final divorce was entered.

In December 1988, Mr. Peters resided in barracks while Mrs. Peters and son continued to reside in the apartment in West Germany. Mrs. Peters asked about the status of the divorce, and because he could not call the United States directly from the barracks, Mr. Peters gave her Gross's name and number. As a result, Mrs. Peters discovered that Hyatt would not proceed until the balance of the fee was paid. Although Mr. Peters indicated his willingness to satisfy the balance, Mrs. Peters told him she would do so while in the United States later that month.

The divorce action was filed December 29, 1988 in Fulton County. As would be expected, Linda Gross of Hyatt Legal Services was the attorney of record. However, the named plaintiff was Debra Y. Peters, and the named defendant was Richard E. Peters. Mrs. Peters signed the verification and "consent to final hearing" on December 28, 1988. The undisputed evidence shows that Mr. Peters's purported signatures on the acknowledgment of service and "consent to final hearing" filed with the complaint, dated December 29, 1988, are in fact forgeries. The acknowledgment of service was notarized by defendant Storey. The "consent to final hearing" was witnessed by defendant Gross. On December 29, 1988, Mr. Peters was confined to quarters in West Germany and therefore could not have signed the documents in Storey's presence. In a deposition taken over two years following the notarial act in question, Storey had no recollection of

the event. Gross was not deposed prior to her death.

A final judgment and decree was entered on January 31, 1989. The decree made no provision for the return to Mr. Peters of his mother's rings or the security deposit, stating instead that "the parties' property has already been divided." Peters also points out that because it was not dealt with in the decree, he was required to pay a telephone bill equivalent to over $700 that Mrs. Peters incurred while living in the apartment.

1. We first address the denial of cross-appellant Hyatt's motion for summary judgment enumerated as error in Case No. A93A1260. Hyatt argues, among other things, that Peters waived his right to bring suit by failing to pursue the judicial remedy available to him. We observe that the harm allegedly done to Peters flows directly from a divorce decree and settlement he contends was fraudulently entered and which contained terms to which he did not assent. It follows that the vitality of Peters's claims of tangible injury resulting from the defendants' actions depends upon the vitality of the underlying judgment of divorce.

Georgia law provides that a motion may be brought to set aside a judgment when the court entering it lacked jurisdiction over the defendant. OCGA § 9-11-60 (d) (1). A divorce granted by a court lacking personal jurisdiction is a nullity, *Harmon v. Harmon*, 209 Ga. 474 (1) (b) (74 SE2d 75) (1953), and may be remedied by a motion to set aside the judgment in the court of rendition. See generally *Abba Gana v. Abba Gana*, 251 Ga. 340 (304 SE2d 909) (1983). However, a void judgment that is not void on its face is nevertheless "binding upon the parties until set aside by a direct attack in the court where it was obtained. [Cits.]" *Long v. Long*, 117 Ga. App. 606, 608 (2) (161 SE2d 417) (1968).

The facts upon which Peters relies clearly suggest a viable judicial remedy under OCGA § 9-11-60. Nevertheless, Peters has apparently chosen to maintain the binding effect of a voidable judgment while at the same time pursuing his claims against Hyatt and its employees. He asserts that he should not be required to reinstate the marriage in order to recover for the injury Hyatt caused him. We agree with Peters's premise, but not without reservations.

Peters presumes that but for the prior judgment fraudulently obtained, he would have secured his mother's wedding rings, the deposit on the apartment in West Germany, and payment of the telephone bill at the apartment, and that therefore his injury is the loss of those items. This position is speculative at best. His only injury apparent from the record is the loss of the right to pursue the items listed because of the existence of a voidable judgment. In fact, the sole injury is the existence of that judgment and the necessity of having it set aside to avoid its binding effect. If he disagrees with the effect of the

judgment, he may set it aside as the law allows. He may likewise acquiesce and accept the judgment as rendered. He may not, however, purport to adopt and invoke a voidable judgment in order to complain of the tangible consequences of that choice in an action against his attorney. See *Don v. Don*, 162 Ga. 240, 242 (133 SE 242) (1926). Peters seems to assume that an election to sue Hyatt for money damages would prevent him from later setting aside a judgment of divorce entered by a court that did not have jurisdiction over him, even though that judgment is alleged by him to be "null and void." We are aware of no controlling authority for that proposition to date. But see *Marshall v. Marshall*, 257 Ga. 494 (360 SE2d 572) (1987). If Peters has experienced an injury due to negligence on the part of the defendants, that injury is clearly not the "loss" of items he may pursue by setting aside a divorce that is binding upon him only until directly attacked under OCGA § 9-11-60 (d) (1). While a later motion by Peters to set aside the divorce may be barred for some other reason, we are aware of no reason why Peters could not simultaneously pursue, in separate actions, relief from the judgment erroneously entered as well as relief for Hyatt's alleged malpractice.

However, this does not end the inquiry. Peters alleges facts suggesting that his marital status was changed without his knowledge, without proper representation, and under terms that he claims were not agreed upon by him. According to Peters, this change in marital status was the direct result of Hyatt's alleged breach of fiduciary duty to him by representing his former wife's interests in the prior divorce action. Peters is thus presented with a Hobson's choice — acquiesce and accept the judgment of divorce as it stands, or set it aside in order to pursue a "proper" divorce that may or may not leave him better off. We find Peters's dilemma sufficient to state a cause of action for at least nominal damages under OCGA § 51-12-4.

The mere fact that his former marital status may be restored by setting the divorce aside does not change this result. "[I]t is not the law in this state that clients seeking to sue their attorneys for malpractice or misconduct which resulted in an adverse or unacceptable judgment must first set aside that judgment before proceeding against their attorneys." *Zepp v. Toporek*, 211 Ga. App. 169, 172 (438 SE2d 636) (1993). While there are clear distinctions that can be made between the prior judgment involved in *Zepp* and the judgment underlying the present case, such distinctions do not demand a different result here. We find the reasoning applied in *Zepp* to be equally applicable in this case.

*Mauldin v. Weinstock*, 201 Ga. App. 514 (411 SE2d 370) (1991), cited by Hyatt for the proposition that failure to pursue an available judicial remedy constitutes waiver, does not control our decision here. In *Mauldin*, the plaintiff did not allow his attorney to file suit in or-

der to compel arbitration of the underlying claim. As *Zepp* suggests, a failure to set aside a final judgment is clearly different in kind from a failure to prosecute a pending claim. Moreover, *Mauldin* clearly should not be extended as authority for the proposition that a client harmed by his attorney's conflict of interest must allow the attorney to correct the error in a manner the client reasonably opposes. The "remedy" available under OCGA § 9-11-60 (d) (1) is simply not a prerequisite to a malpractice action under the facts presented. See *Zepp*, supra.

Hyatt's various arguments in support of this motion fail to demonstrate conclusively that it bears no legal responsibility whatsoever for the result of its alleged failure to fully represent its client's interests in the divorce action, on the one hand, while at the same time actively representing his former wife in the final hearing of that action. Since a judgment right for any reason must be affirmed, we hold that the trial court did not err in denying Hyatt's cross-motion for summary judgment. *McDonnell v. Episcopal Diocese of Ga.*, 191 Ga. App. 174, 177-178 (381 SE2d 126) (1989).

2. Peters contends in Case No. A93A1259 that the trial court erred by denying his motion for partial summary judgment on the issue of Hyatt's liability for malpractice and breach of contract.

(a) In support of his claim for malpractice, he argues that he retained Gross and Hyatt to represent him in obtaining a divorce; that he informed Gross that he wanted certain things included in any agreement incorporated into the decree of divorce; that although the parties were eventually divorced, in that litigation Hyatt represented not Peters but the adverse party, his wife, and obtained a decree incorporating not what Peters had informed his attorney he desired, but what his wife did.

As pointed out by Peters, under EC 5-15 and DR 5-105, an attorney may not represent clients with adverse interests unless "it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each." DR 5-105 (C).

Therefore, if Gross and Hyatt had agreed to represent Peters during his initial consultation and later represented Peters's wife in the action filed, such a course of action would be an obvious conflict of interest, unless the parties were informed of the possible effects of such dual representation and they nonetheless agreed to proceed in that fashion. The expert relied upon by Hyatt, an attorney experienced and prominent in the field of domestic relations, agreed with this standard.

To determine whether the standard was breached here as a matter of law, entitling Peters to partial summary judgment on this issue,

we must apply that standard to these facts. It is undisputed that Peters had an initial consultation with Gross and at that consultation he signed a document captioned "fee statement[,] uncontested divorce." The document specifies the fees involved in an uncontested divorce, and states that when half the total attorney fee and costs are paid, Hyatt will complete preparation of the pleadings. The last sentence in the text of that document recites that "your signature allows us to represent you after payment is made." It is signed by Richard E. Peters, and it is undisputed that Peters paid half the total amount at the time of his initial visit.

It is unclear from the face of the document whether "payment" refers to the entire fee or whether the deposit made by Peters qualified, under the contract, to begin Hyatt's representation. Clearly, Peters understood it to do so. However, in discovery documents Peters requested that Hyatt admit that "on or about October 14, 198[8], [he] sought legal advice and retained Linda Gross, an agent, servant and/ or employee of Hyatt Legal Services as his legal representative in an action for divorce against his wife." Hyatt denied that request. In response to an interrogatory asking which party Hyatt had represented in the divorce action, Hyatt stated that although Peters had initially consulted with Hyatt, at the time of that consultation, under the terms of the agreement Peters signed, Hyatt did not represent Richard Peters.

Therefore, contrary to Peters's assertion that the facts of this case are "essentially undisputed" that he retained Gross to represent him, the evidence is very much in conflict as to whether Hyatt actually undertook to represent Peters in a contemplated divorce action against his wife. This issue of fact remains for jury determination. Since Peters's claim of an ethical breach and resulting malpractice on the part of Hyatt is dependent upon establishing such representation, the trial court properly denied Peters's motion for partial summary judgment on this issue.

(b) Peters contends that Gross breached her fiduciary duty to him by acting as a witness to his forged signature on the "consent to final hearing" pleading and that this breach also constitutes malpractice. See *Holmes v. Drucker*, 201 Ga. App. 687, 688-689 (1) (411 SE2d 728) (1991). As the movant for summary judgment, Peters has the burden of showing that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). He has failed to carry this burden.

Peters introduced evidence that his purported signature on that document was forged and that he did not authorize Gross to execute it on his behalf. However, breach of fiduciary duty would only be

shown if Gross knew or should have known that the signature was not that of Peters. Otherwise, it would simply be an honest mistake. His initial consultation with Gross took place on October 14, 1988. That was his only meeting with Gross. The "consent to final hearing" was signed more than two months later, on December 29, 1988. No admissible evidence in the record discloses what actually transpired on December 29, 1988 when the signature on the "consent to final hearing" was witnessed by Gross. Therefore, viewing the evidence in the light most favorable to Hyatt, as the respondent, Peters has not shown entitlement as a matter of law to judgment in his favor on his claim for breach of fiduciary duty. The trial court did not err in denying his motion for partial summary judgment on this ground.

3. The court likewise did not err in denying Hyatt's motion for partial summary judgment on the issue of punitive damages in Case No. A93A1260, since a question of fact remains whether Hyatt has injured Peters as a result of that "entire want of care which would raise the presumption of conscious indifference to consequences." OCGA § 51-12-5.1 (b). See generally *Powell v. Ferreira*, 198 Ga. App. 465 (402 SE2d 85) (1991). This enumeration is without merit.

4. Peters enumerates as error in Case No. A93A1259 the grant of summary judgment to defendant Storey based on her alleged breach of duty in notarizing the forged signature appearing on the acknowledgment of service in the prior divorce action. Peters points out that OCGA § 51-1-6 provides for a cause of action against any person who breaches a legal duty. Moreover, OCGA § 45-17-8 (e) provides that "[i]n performing any notarial act, a notary public shall confirm the identity of the document signer, oath taker, or affirmant based on personal knowledge or on satisfactory evidence." Storey has no recollection of the transaction in question. Peters argues that since the document is an undisputed forgery, there is an inference that Ms. Storey failed to perform her statutory duty with due care such that she may be held liable for the harm done to Peters. We agree. Under the facts alleged, Peters states a sufficient cause of action against Storey.[1] Without an indication that other evidence exists or was relied upon by the trial court negating the inference Peters establishes, we are constrained to conclude that the court erred in granting Storey's motion for summary judgment.

We likewise find that the trial court erred in granting Storey's motion for partial summary judgment on the issue of punitive damages. Storey testified that there were occasions during her employment at Hyatt wherein she would notarize documents without actu-

---

[1] For what appears to be the sole case authority in this state dealing with the potential for civil liability based on notarial acts, see *Signal Knitting Mills v. Roozen*, 150 Ga. App. 552, 553 (2) (258 SE2d 261) (1979).

ally witnessing the signature or talking to the signor. She would perform this function at the request of attorneys at the office. Whether such discharge of her statutory duty could be construed to be "that entire want of care which would raise the presumption of conscious indifference to the consequences" under OCGA § 51-12-5.1 (b) is a jury question. We hold that neither Storey nor Hyatt is entitled to summary judgment on the issue of punitive damages based on Storey's conduct.

5. In Case No. A93A1260, Hyatt claims error in the court's ruling that an internal memorandum alleged to have been written by Linda Gross regarding her actions in the Peters's divorce case was inadmissible at trial. However, the true error complained of, as argued in Hyatt's brief in support of its cross-appeal, is that the court "did not clarify whether [the memorandum] was inadmissible for use both in the summary judgment motion and at trial." This enumeration presents no issue ripe for review, and moreover, this court is not the proper forum to provide the clarity Hyatt seeks. We express no advisory opinion whether the evidence in question may be admissible at trial for any reason. See, e.g., *Smith v. Billings*, 132 Ga. App. 201, 204 (4) (207 SE2d 683) (1974).

*Judgments affirmed in part and reversed in part. Cooper, J., concurs. Beasley, P. J., concurs in the judgment only.*

DECIDED DECEMBER 20, 1993.

*Calabro & Jennette, Michael M. Calabro*, for appellant.
*Goodman, McGuffey, Aust & Lindsey, William S. Goodman, Jennifer M. Daniels*, for appellee.